UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 1:06–cr-00273 (CKK) |
| | : | |
| DUANE PHILLIP JONES, | : | Trial Date: 1/22/07 |
| also known as Chicken Jones | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The United States, by and through its attorney, the United States Attorney for the Eastern District of Virginia, respectfully submits this Response to the Defendant's Motion to Suppress his statements. The government relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing:

FACTUAL BACKGROUND

1. On June 29, 2006, a warrant was obtained in the Superior Court for the District of Columbia charging the defendant with Murder One while Armed. Subsequently, Metropolitan Police Department officers and U.S. Marshals worked to locate the defendant, eventually using a SWAT team and helicopters to effect his arrest on August 10, 2006 in the Clay Terrace area of Washington, an area known for open air drug markets.

2. At least one deputy U.S. Marshal will testify that the Marshals were in the Clay Terrace area looking specifically for the defendant; that they knew him to be wanted for Murder One while Armed; that they knew that the defendant was aware that he was being sought on the outstanding warrant but had not turned himself in; that they knew he had a previous conviction for possession of a firearm by a convicted felon; that they knew that he had a previous conviction for distribution of crack cocaine; that they knew that individuals who are involved in the distribution of cocaine arm

themselves with firearms especially when they are in high-crime, open air drug markets, such as Clay Terrace.

3. At least one deputy U.S. Marshals would further testify that upon making eye contact with the defendant, the defendant began running to avoid capture. A foot pursuit ensued. The U.S. Marshals pursued the defendant into a darkened stairwell. The defendant was able to reach a second level of the stairs before a deputy U.S. Marshal was able to stop his progress.

4. Fearing for his safety, the safety of his colleagues, the safety of the defendant, and any others in the stairwell (this was during the late afternoon of Summer school break), the deputy U.S. Marshal inquired of the defendant whether he had a weapon so that it could be safely removed from the defendant and so that no one would be injured or killed if the defendant reached for the weapon, or the weapon was otherwise revealed. This inquiry was made almost simultaneously with the apprehension – for the purpose of public safety.[1] The defendant answered affirmatively, stating that he had "a burner in his waistband."[2] "Burner" is a street term for firearm. A deputy U.S. Marshal then removed a loaded firearm from the defendant's waistband. The weapon, a loaded .45 caliber pistol with an extended magazine, was secured without any violence.

## ARGUMENT

### I. Absence of Miranda Warnings is Answered by the Public Safety Exception

---

[1] The Government would stipulate that the defendant was "in custody" when questioned about a weapon and had not been read *Miranda* warnings.

[2] The defendant also repeatedly made a spontaneous statement of "just shoot me," or words to that purpose. The Government, without addressing here whether those spontaneous statements are subject to suppression, does not seek their introduction at *this* trial, under Federal Rule of Evidence 401. Therefore, any objection by the defendant to the introduction of those particular statements should be rendered moot.

The public safety exception to the Miranda rule permits all non-coercive questioning reasonably calculated to address an immediate threat to public safety. The Fifth Amendment provides that "[n]o person . . . shall be compelled in a criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, the Supreme Court fashioned a set of prophylactic rules designed to ensure that this right is respected. Miranda v. Arizona, 384 U.S. 436 (1966). Although the Supreme Court has found Miranda to be a constitutional rule, it also has held that the exception carved out in New York v. Quarles, 467 U.S. 649 (1984), is "as much a normal part of constitutional law as the original decision." Dickerson v. United States, 530 U.S. 428, 441 (2000).

In Quarles, the Court held that "there is a public safety exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." Quarles, 467 U.S. at 655. In Quarles, two police officers were approached by a woman who claimed she had just been raped by an armed man. The officers found Quarles inside a nearby market. After handcuffing him, and without reading him a Miranda warning, one officer asked Quarles where the gun was. Quarles, who was then surrounded by at least four police officers, nodded in the direction of some cartons and said, "The gun is over there." Id. at 652. The Supreme Court held that this statement was admissible at Quarles's trial for criminal possession of a weapon, despite its being made while in custody and before a reading of Miranda rights.

The exception announced in Quarles eliminates, in situations involving a threat to public safety, "the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." Quarles, 467 U.S. at 655. The Court held that in "a situation in which police officers ask questions reasonably prompted by a concern for the public safety," the "doctrinal underpinnings of Miranda" do not apply. Id. at 656. In such a situation, the police officer's

questions are intended to "secure their own safety or the safety of the public" rather than to "elicit testimonial evidence from a suspect." Id. at 659. Thus, the Court concluded that the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657.

The Supreme Court in Quarles held that, where public safety is at issue,

> the availability of [the Quarles] exception does not depend upon the motivation of the individual officers involved. In a kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on *post hoc* findings at a suppression hearing concerning the subjective motivation of the arresting officer.

Id. at 656.

The Quarles exception to Miranda is well established and has been repeatedly reaffirmed by the Supreme Court and federal courts. See Dickerson v. United States, 530 U.S. 428, 437-38 (2000); United States v. Newton, 369 F.3d 659, 677-78 (2d Cir.), cert. denied, 125 S. Ct. 371 (2004); United States v. Edwards, 885 F.2d 377, 384 (7th Cir. 1989). In fact, the Quarles exception has been extended beyond the factual situation present in Quarles to situations in which (1) the threat to safety was limited to individual police officers and not also to the general public and (2) the threat was posed by items other than guns or other weapons. See United States v. Lackey, 334 F.3d 1224, 1227-28 (10th Cir.) (applying Quarles exception and noting that it was "irrelevant that the principal danger in this case was the risk of injury to the officers or Defendant himself, rather than ordinary members of the 'public'"), cert. denied, 540 U.S. 997 (2003); United States v. Webster, 162 F.3d 308, 332 (5th Cir. 1998) (applying Quarles exception to police officers' question to defendant whether he had any needles in his pockets before they patted him down), cert. denied, 528 U.S. 829

(1999); Edwards v. United States, 619 A.2d 33, 36 (D.C.App. 1993) (holding that "police questions, "where's the gun" . . . were 'reasonably prompted by a concern for the public safety'").

Most recently, the U.S. Court of Appeals for the District of Columbia applied the Quarles exception when a suspect was asked, without *Miranda* rights, about the whereabouts of his gun immediately after his apprehension. United States v. Brown, 449 F.3d 154, 159 (D.C. Cir. 2006) (citing New York v. Quarles, 467 U.S. 649 (1984)). The Brown panel held that despite the fact that "[n]one of the officers had yet read Brown his rights . . . the police officer's inquiries fell squarely within the public-safety exception to *Miranda* . . . ." Id.

Here, the factual situation supports the public safety exception when a deputy U.S. Marshal inquired of the defendant whether the defendant had a weapon to "secure [his] own safety or the safety of the public [rather than to] elicit testimonial evidence from a suspect." Quarles, 467 U.S. at 659. Indeed, the defendant's own safety was at risk if the deputy U.S. Marshal, or other law enforcement, had thought the defendant might be reaching for a firearm in any subsequent movements. In this darkened stairwell of a high-occupancy apartment complex, in the late afternoon of Summer, the question, and subsequent answer, protected the public safety of many individuals.

That sequence of events and any proposed testimony about it fell squarely within the Quarles exception to Miranda.

II. The Evidence Does Not Support Defendant's Claim that his Statement was Involuntary

The defendant further alleges that his statement is involuntary. Def. Motion to Suppress Statement at 2.

"A confession is inadmissible as a matter of due process [only] if under the totality of the circumstances it was involuntarily obtained (for example, if the police beat a confession out of an

individual after he validly waives his *Miranda* rights)." United States v. Bradshaw, 935 F.2d 295, 299 (D.C.Cir.1991).

When "a confession challenged as involuntary is sought to be used against a criminal defendant at his trial ... the prosecution must prove by at least a preponderance of the evidence that the confession was voluntary." Lego v. Twomey, 404 U.S. 477, 489(1972)   The government may meet the burden by showing that a defendant's confession was "the product of an essentially free and unconstrained choice." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973) (internal quotation marks omitted).

In this case, the Marshals apprehended the defendant pursuant to a valid arrest warrant. There is no evidence, nor does the defendant even allege, that any physical or mental coercion was applied by the law enforcement officers prior to the question about a weapon.

The defendant's claim of involuntariness should be denied.

## **Conclusion**

WHEREFORE, the government respectfully requests that the defendant's motion to suppress his statements be denied.

Respectfully submitted,

CHUCK ROSENBERG
United States Attorney


By: _____/S/_____
Erik R. Barnett
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3826

Ronald L. Walutes, Jr.
Assistant United States Attorney
D.C. Bar No. 415541
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3910

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No.: 1:06CR00273 (CKK)** |
| | : | |
| **DUANE JONES,** | : | **Trial Date: 1/22/07** |
| **also known as Chicken Jones** | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

It is this _____ day of _____, 2007, hereby

**ORDERED** that the defendant's motion to suppress is denied.

_____
Colleen Kollar-Kotelly
United States District Court Judge
   for the District of Columbia

copies:
    Erik R. Barnett
    Ronald L. Walutes, Jr.
    Assistant U.S. Attorneys
    2100 Jamieson Avenue
    Alexandria, VA 22314

    Shawn Moore, Esq.
    Assistant Federal Public Defender
    625 Indiana Avenue, N.W., #550
    Washington, D.C. 20004