Copies to: Judge
AUSA – Special Proceedings
Dft.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,        :
                                 :
                                 :   Criminal No.: 06-273-(CKK)
          v.                     :
                                 :
                                 :
DUANE PHILLIP JONES,             :
                 Defendant       :   **FILED**
                                 :
                                 :   APR 1 8 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

DEFENDANT'S RESPONSE
TO GOVERNMENT'S OPPOSITION

COMES NOW, Duane Phillip Jones, the Defendant in the above-
entitled matter, filing pro se respectfully submits his Response
to the Governmsnt's Opposition of Defendant's motion pursuant to
28 U.S.C. § 2255.


                            ARGUMENT

In the Government's opposition brief, they content that;
". . . defendant has not established that his counsel performed
deficiently and that he thereby was prejudiced. . .".  (Doc. 75,
Pp.1).  Your Defendant respectfully disagrees for the following
reasons.

I.   THE GOVERNMENT IS INCORRECT WHEN THEY STATE THAT; "Government
     Exhibit 2(a) is a laboratory analysis report dated November
     2, 2006. . ." (Doc. 75, Pp.12)



Received
Mail Room

APR 18 2011

Angela D. Caesar, Clerk of Court
US District Court, District of Columbia

At trial, Mr. Walutes, in questioning Detective Washington state:

> MR. WALUTES:     ". . .if I could hand you what has been admitted into evidence as both Government Exhibit 2 and 2(a), which are the drugs and DEA-7. . ."

(1/23/07 Tr.387)

Mr. Walutes again refers to the DEA-7, as Exhibit 2(a) moments later while still questioning Detective Washington.

> MR. WALUTES:     ". . . the DEA-7 report which is now Government Exhibit 2(a) and is on the monitor for the jury to see. . . "

(1/23/07 Tr.388)

(It should be noted that a correction was made in the Transcripts to Line 24, Page 388, changing "side" to correctly read "slide". This change was made at the request of the Defendant, however, it seems that another unsolicited change was made on the same page at Lines 7-8, changing the Exhibit references from the original 2(a) to 2; and deleting the word "and". This changes the meaning of this statement entirely.)

II. THE GOVERNMENT IS INCORRECT IN STATING THAT; "Thus, the record reflects that the DEA-7, which provided in the 'Remarks' section that defendant was arrested on a homicide warrant, which was not included among the pages comprising Government Exhibit 2(a)." (Doc. 75, Pp.13)

-2-

In the process of Mr. Walutes' questioning of Detective
Washington, the following exchange occurred.

MR. WALUTES:      "Detective Washington, if I could draw your
                  attention first to the DEA-7.

THE COURT:        "Do you want them to look at this?

MR. WALUTES:      "Thank you, Your Honor.

MR. WALUTES:      "Do you see on your monitor, Detective
                  Washington, the front page of the DEA-7?"

THE COURT:        "What exhibit is it?"

MR. WALUTES:      "Government Exhibit 2(a), Your Honor."

In Defendant's Exhibits A and B, appended hereto is a copy of
the DEA-7 and the Laboratory Report dated November 2, 2006, respec-
tive, referenced by the Government.  If one looks to the bottom,
left-hand corner of Exhibit A, you will find DEA Form-7.  Looking
at Exhibit B, the Laboratory Report no such marking is found.

More importantly, however, is the Government's own state-
ments in their Opposition brief.  In one instance they breakdown
what their Exhibit 2A consisted of; ". . .three pages: (1) the
DEA Laboratory Report; (2) Photographs of the analyzed drugs; and
(3) the 'DEA-7'".  (Doc. 75, Pp.11)

Yet further on in their brief the Government writes: "Thus. . .
the record reflects that the 'DEA-7', which provided in the
'Remarks' section that defendant was arrested on a homicide
warrant, was not included among the pages comprising Government

-3-

Exhibit 2A.  (Doc. 75, Pp.13).  Clearly contradicting statements.
Again, during this witness' testimony.

MR. WALUTES:     "Could you draw the connection between
                  Government Exhibit 2(a) and the heat-seal
                  and the DEA-7 report which is now Govern-
                  ment Exhibit 2(a) and is on the monitor
                  for the jury to see hopefully?"

The witness, referring to the DEA-7 shown on the monitor, goes into
detail describing for the jury what transpires during a drug arrest ,
which can only be viewed in the remarks section of the DEA-7.

WITNESS:          "Whenever an officer comes into contact with
                  any suspected narcotics, first it's going
                  to be field-tested  to determine what it is
                  for the appropriate charge.  In this case
                  here it field-tested positive for cocaine.

                  Once the substance was field-tested, the
                  substance was transported back to the officer's
                  unit where it was processed into evidence.
                  What I mean by processing into evidence, the
                  officer prepared the DEA-7.  A DEA-7 form. . .

(1/23/97 Tr.388)

During this entire time the DEA-7 is viewed by the jury on
the monitor.

Yet another contradicting statement in the government's brief
is found on Page 427 of the Transcripts.  In their brief, the
government claims the page of the DEA-7, which contains the "Remarks"
section was not shown to the jury.  However, the transcripts prove

-4-

otherwise.

MR. WALUTES:        "If I might start over, Detective Washing-
                    ton, could you explain the connection and the
                    unique number you that you started to explain
                    between the heat-seal which is Government
                    Exhibit 2 and the DEA-7 which is Government
                    Exhibit 2(a)?"

WITNESS:            "Where I left off?"

MR. WALUTES:        "Yes, please.   Actually, if you wouldn't mind,
                    if you could start, yes, an officer completes
                    the first page?"

WITNESS:                  The officer prepares a DEA-7.   A DEA-7
                    is the form provided by the Drug Enforcement
                    Administration for all suspected narcotic
                    acquisitions that comes into the custody of
                    Metropolitan Police Department.

                          Once that form is filled out, the officer
                    will than prepare a PD-95.

(1/23/07, Tr.390)

Then during a meeting after the jury had left the courtroom,

this exchange took place.

MR. WALUTES:              "I really don't care about the third
                    page so much, Your Honor.   The second page
                    as to the pictures of the drugs. . ."

THE COURT:                "I'm sorry.   The pictures are there.
                    The lab with the purity.   He was looking at
                    what I thought was a front page of the DEA-
                    7, which had the charge for the arrest

warrant.  Is that part of the exhibit or not?"
(1/23/07, Tr.427)

If, as the Government contends, the DEA-7, which provided the
"Remarks" section was not included in the exhibit, then how did the
front page of the DEA-7, which, as the Judge tells us, "had the
charge for the arrest warrant" make it onto the monitor for Mr.
Walutes to direct his witness, Detective Washington, to?

Lastly, the fact that the DEA-7, with the "Remarks" section
was in-fact displayed on the monitor for the jurors is demonstrated
by defense counsel's remarks during the Bench Conference once his
client has called the matter to his attention.

| | |
|---|---|
| MR. MOORE: | "Your Honor, could we approach?" |
| THE COURT: | "Yes" |
| MR. MOORE: | "Your Honor, he has the wrong slide on there." |
| THE COURT: | "One thing you need to do is make sure that none of 'also on the guns' and stuff that you don't have on the front, that on any of the paperwork and stuff whether it is with the exhibits or otherwise. . ." |
| MR. WALUTES: | --- |
| MR. BARNETT: | "He used the report itself and not this." |
| MR. MOORE: | "That's what I thought he was using." |
| MR. BARNETT: | "He didn't use the '7'. He just used this. It has no reference to that." |

THE COURT:     "Okay.  And you just need to redact it any-
               way.  Just redact it.  But I think it's hard
               to read which is why I think he was starting
               to give the explanation either that or just
               put it through a black pen."

THE CLERK:     "Should we have this on the screen?"

THE COURT:     "What we have on the screen is a laboratory
               repart itself."

MR. MOORE:     "I believe the juror may be signaling it is
               not."

(1/23/07 Tr.388-89)

If, the DEA-7, was not on the jury's monitor, what was the
reason for the Bench Conference?  What was it that the Defendant
saw that he called to the attention of his counsel?  What did the
Court want redacted?  Why was the Clerk concerned that "it" was on
the screen?  Defendant contends that the DEA-7 was indeed displayed
on the monitor and the jury did indeed view the "Remarks" section
reading the charge for the arrest warrant and thereby prejudicing
Defendant's opportunity for a fair trial.

Insofar as the Government's issue with the timeliness of
Defendant's filing of his § 2255.  It is unclear from reading
their brief, whether they contend that the motion is time barred
or not.  On the one hand they point out that; "In this case, the
time for the filing of defendant's petition of writ of certiorari
expired on September 8, 2009. . .[T]he government does not now
challenge the timeliness of the instant motion."  (Doc. 75, Pp3,
Fn 2)

-7-

Yet, on the other hand, the Government claims that Defendant's motion need not be scheduled for a hearing, "because his motion is time barred." (Doc. 75, Pp.21)

In accordance with the holding in CLAY v. U.S., 537 U.S. 522, 532 (2003), For the purpose of starting the clock on § 2255's one-year limitation period, a judgement of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of conviction. Thus, according to the Government's calculations, Defendant's one-year limitation expired on September 8, 2010[1] and pursuant to HOUSTON v. LACK, 487 U.S. 266, 276 (1988), deeming a motion by a pro se prisoner to be filed at the time it is put into the prison mail system, Defendant's § 2255 motion is timely filed as it bears the date of delivery and acceptance in the prison "LEGAL MAIL" system of September 3, 2010. (see attached Ex. C, Inmate Request to Staff, 4/1/2011).

It should also be noted that the Clerk's "FILED" stamped copy of Defendant's motion (Doc. 64), did not include the attachment listing GROUNDS FIVE and SIX, which is referenced on Page 16, Item 12(D) of his original motion. Defendant presumes that all parties did receive the complete motion attachment included as this issue has not been raised.

---

[1] The Government mistakenly stated the signing date on Defendant's Certificate of Service as September 3, "2009", (Doc. 75, Pp. 3, Fn 2), when it actually is dated September 3, 2010.

-8-

CONCLUSION

A district court judge must grant a prompt hearing under § 2255 unless the motions and files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255.

In the Defendant's case there is nothing in the motions, or the files or the records to disuade this Court from scheduling an evidentiary hearing. The Defendant's entitlement to habeas relief hinges on whether the prejudice prong of STRICKLAND has been statisfied, whether counsel's errors, when viewed cumulatively, were sufficient to undermine the confidence in the outcome of the trial. By viewing the "Remarks" section on the DEA-7, the jury was tainted thereby necessitating a motin for mistrial. Both the trial and appellate counsels had the weapons they could have used to request either a mistrial or a new trial and they failed to do so.

WHEREFORE, for the reasons stated hrein, it would be in the interest of justice to hold an evidentiary hearing and GRANT Defendant's motion pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

Dated: 4/14, 2011

_____
Duane P. Jones, pro se

**KY 634**

U.S. Department of Justice
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| 1. HOW OBTAINED (Check) ☐ Purchase ☒ Seizure ☐ Free Sample ☐ Lab Seizure ☐ Money Flashed ☐ Compliance Sample (Non-Criminal) ☐ Internal Body Carry ☐ Other (Specify) | 2a. FILE NO. 109-288 | 2b. PROGRAM CODE | 3. G-DEP ID FELONY |
|---|---|---|---|

| 4a. WHERE OBTAINED (City, State/Country) Washington, DC | 4b. DATE OBTAINED 06-10-2006 | 5. FILE TITLE Jones, Duane Phillip |
|---|---|---|

| 6a. REFERRING AGENCY (Name) Metropolitan Police Department | 6b. REFERRAL ☒ Case No. OR ☐ Seizure No. No. | 7. DATE PREPARED 06-10-2006 | 8. GROUP NO. |
|---|---|---|---|

| 9. Exhibit No. | 10. FDIN (8 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 1 | | Crack Cocaine | large clear zip containing (10) yellow zips containing White rock substance | 10 zips | 10 zips | |
| | | Crack Cocaine | large clear zip containing (23) yellow zips containing White rock substance | 23 zips | 23 zips | |
| | | Crack Cocaine | large clear zip containing loose white rock subst. | 1 | 1 | |

51.09

| 16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG? | ☒ NO (included above) | ☐ YES (if Yes, enter exhibit no. and describe original container fully) |
|---|---|---|

REMARKS:

On August 10th 2006, members of the Metropolitan Police Department arrested the above named Defendant for HOMICIDE (Arrest Warrant #2006CRW00197B). The listed Defendant was also found to be "PDID CRACK COCAINE While ARMED" The listed item was recovered as evidence in reference to the above listed arrest and was recovered by Officer James Boteler of NSID for processing. A portion of the white rock was field tested yielding a positive color reaction for cocaine base.

1395/69

COC Item #1: Defendant / Sergeant Busch Darling / Officer James Boteler / Officer Ed Gilmore (FT) / Officer James Boteler (HS) (NSID Property Book)

| 17. SUBMITTED BY SPECIAL AGENT (Signature) *James M Boteler* | 18. APPROVED BY (Signature and Title) *James A. Wm* |
|---|---|

**LABORATORY EVIDENCE RECEIPT REPORT**

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) 8/10/06 | 21. Print or Type NAME and TITLE *Crasov, K* |
|---|---|---|
| 22. SEAL ☐ Broken ☒ Unbroken | 23. RECEIVED BY (Signature & Date) 8-11-06 | 24. Print of Type NAME and TITLE |

**LABORATORY EVIDENCE RECEIPT REPORT**

25. ANALYSIS SUMMARY AND REMARKS

Y99357   **SEE ATTACHED** KY 634

| 26. Exhibit No. | 27. Lab No. | 28. | ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION 29. Strength | 30. Measure | 31. | KY 634 RESERVE DRUG |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |

DEA Form -7
(August 2000)

Exhibit A



**U.S. Department of Justice**

**Drug Enforcement Administration**

## LABORATORY REPORT

TO:   **Metropolitan Police Department**          **CASE NUMBER: 109-288**

FROM:  **Mid-Atlantic Laboratory**
        **Largo, Maryland**

| Exh. No. | Lab. No. | Active Drug Ingredient (Established or Common Name) | Gross Weight | Net Weight | Conc. or Purity | Amount of Actual Drug | Reserve Weight |
|---|---|---|---|---|---|---|---|
| 1.01 | KY634 | Cocaine Base | 50.3g | 2.4g | 55% | 1.3g | 1.5g |
| 1.02 | KY634 | Cocaine Base | n/a | 3.1g | 55% | 1.7g | 2.5g |
| 1.03 | KY634 | Cocaine Base | n/a | 12.6g | 50% | 6.3g | 11.8g |

**Remarks:**
Gross weight includes all packaging materials and evidence envelope.

### Certification of Compliance Pursuant to D.C. Code § 48-905.06 (2001)

I attest and certify that I am a trained chemist employed by the United States Department of Justice, Drug Enforcement Administration, that I am charged with an official duty to perform analyses of suspected controlled substances, and that I have legal custody of this report.

All suspected controlled substance containers received by Drug Enforcement Administration chemists bear unique Drug Enforcement Administration laboratory numbers. When I received the container(s) bearing the laboratory number(s) set out above, I inspected the container(s) and verified that a sealed condition existed and then properly analyzed the contents for the presence of controlled substances by methods which are reliable and relevant to the identification of a controlled substance which includes procedures generally accepted in the forensic science community. These methods employed chemical reagents and/or analytical instruments which were free of contamination and were operating properly.

The analyses that I conducted were accomplished while safeguarding the chain of custody of the substances being analyzed. The results of my analyses are accurately set forth on this official report. After I completed my analyses, I placed the original container(s) and contents (except for the substance(s) consumed or those removed for other purposes) into a separate container which I then sealed in such a manner that any tampering would be readily evident. In the case of evidence submitted by the Metropolitan Police for the District of Columbia (MPDC), the officially sealed container bearing the above laboratory number(s) was returned to the evidence vault maintained by the MPDC for proper storage.

Analyzed By:  _Lanette M. Allison, Forensic Chemist_          Date: _11/2/2006_
            (Signature, Printed Name, Title)

**Original Signed by:**          Official DEA Seal
**Laboratory Director**

Approved By: _James V. Malone, Laboratory Director_          Date: _____
            (Signature, Printed Name, Title)

Form LS-05-010 (July 2005)                    Page 1 of 1

Exhibit B

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mr. FEHLNER | DATE: 1 APR 11 |
|---|---|
| FROM: JONES, D. | REGISTER NO.: 10563-007 |
| WORK ASSIGNMENT: UNIT ORDERLY | UNIT: DEL-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

PLEASE PROVIDE DOCUMENTATION OF MY "LEGAL MAIL"
SENT BETWEEN THE DATES OF 15 AUG 2010 & 1 OCT 2010.
I NEED THIS FOR A COURT FILING

                                    THANK YOU

U.S. District Court FOR the District
OF ~~Columbia~~ Columbia
U.S. Court House
333 Constitution Avenue N.W.
Wash., DC 20001

(Do not write below this line)

DISPOSITION:

9-3-10
2 pieces of legal mail
sent out

| Signature Staff Member | Date 9-1-11 |
|---|---|

Record Copy X File; Copy - Inmate     This form replaces BP-148.070 dated Oct 86
(This form may be replicated via WP)   and BP-S148.070 APR 94


PRINTED ON RECYCLED PAPER