UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-273 (CKK) |
| ) | |
| DUANE PHILLIP JONES ) | |

**UNITED STATES' OPPOSITION TO
DEFENDANT'S AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE, PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Opposition to Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. As grounds for this Opposition, the government says:

**INTRODUCTION**

Defendant alleges that his trial counsel rendered ineffective assistance of trial counsel when he failed (1) to object to the government's presentation of an un-redacted DEA-7, (2) to create an adequate record on the DEA-7, (3) to move for a mistrial when the un-redacted DEA-7 allegedly was displayed, and (4) to request a curative jury instruction regarding the allegedly improper presentation of the DEA-7.

Defendant also alleges ineffective assistance of appellate counsel for allegedly failing (5) to correct the trial record and (6) to consult with defendant regarding appellate issues. See Defendant's Memorandum of Law Supporting Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Amended Memo) at 4-13.

However, the record establishes that defendant's counsel did not perform deficiently, and defendant has not established that but for his trial counsel's allegedly deficient performance regarding the DEA-7 there is a reasonable probability that the result of the proceeding would have been different, or that there is a reasonable probability that, but for his appellate counsel's alleged failure to raise the DEA-7 issue, he would have prevailed on his appeal.  Accordingly, the Court should summarily deny Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

**BACKGROUND**

The government incorporates by reference the Procedural History and Factual Background set forth in its Opposition to Defendant's Pro Se Motion to Vacate, Set Aside, or Correct the Sentence, pursuant to 28 U.S.C. § 2255 (Docket No. 75), filed on December 17, 2010.[1]

On April 18, 2011, defendant filed a response to the government's opposition, see Docket No. 81, and on October 5, 2012, defendant, through counsel, filed an Amended Motion to Vacate, Set Aside, or Correct the Sentence, pursuant to 28 U.S.C. § 2255.  See Docket No. 93.

---

[1] On September 27, 2010, the Court granted defendant's Section 3582 motion, and on January 5, 2011, the Court reduced his sentence on Count One, from a term of 137 month's incarceration to a term of 120 months' incarceration.  All other provisions of the June 21, 2007 Judgment remained in effect.  See Docket No. 79.

Additionally, defendant is correct that the certificate of service appended to defendant's initial motion bore the date of September 3, 2010, rather than September 3, 2009 as represented in footnote 2 of the government's brief.  The significance of the government's representation was that the document also bore a file stamped date of September 16, 2010.  However, the typographical error regarding the date does not alter the government's prior assertion regarding the timeliness of the motion's filing, see Houston v. Lack, 487 U.S. 266, 276 (1988) (deeming a motion by a pro se prisoner to be filed at the time it is put into the prison mail system), and the government does not challenge the timeliness of the motion.

The government now files this Opposition to Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

**ARGUMENT**

**A.    LEGAL STANDARD**

Section 2255 permits a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. See 28 U.S.C. § 2255.

To gain relief under Section 2255, a defendant must show "a good deal more than would be sufficient on a direct appeal from his sentence." United States v. Pollard, 959 F.2d 1011, 1020 (D.C. Cir. 1992). Indeed, a court may grant relief pursuant to Section 2255 only if "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Id. (internal citation omitted). Moreover, claims previously raised and rejected on direct review will not normally be entertained in a Section 2255 motion. Reed v. Farley, 512 U.S. 339, 358 (1994); United States v. Jackson, 1998 WL 389111, *1 (D.C. Cir. June 26, 1998); Garris v. Lindsay, 794 F.2d 722, 726-27 (D.C. Cir. 1986). The "mere lack of success on that appeal does not pave the way for collateral attack." Garris, 794 F.2d at 726-27. Therefore, a defendant cannot try to recycle previously rejected here on collateral attack, absent an intervening change in the law. See United States v. Greene, 834 F.2d 1067, 1070 (D.C. Cir. 1987). "'Any other rule would frustrate policies of strongly favoring conservation of judicial resources and finality of judicial decisions.'" Id. (quoting Garris, 794 F.2d at 726).

As to a claim of ineffective assistance of counsel, in Strickland v. Washington, 466 U.S.668, 687-88 (1984), the Supreme Court established a two-part standard for evaluating such claims. First, the defendant must show that his attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must establish that his counsel's performance was "not within the range of competence demanded of attorneys in criminal cases." See Hill v. Lockhart, 475 U.S. 52, 56 (1985). In assessing trial counsel's performance, judicial scrutiny must be "highly deferential" and the court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Attorney performance is to be measured by "reasonableness under prevailing professional norms." Id. at 688. As the Court stated in Strickland:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689.

Second, even if a defendant shows that his attorney's representation was deficient, the defendant also affirmatively must show that the deficient representation resulted in prejudice "so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Strickland, 466 U.S. at 687. To meet this standard, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

Id. at 687, 694; see also United States v. Toms, 396 F.3d 427, 432 (D.C. Cir. 2005); United States v. Eli, 379 F.3d 1016, 1019 (D.C. Cir. 2004). "A reasonable probability" means "a probability sufficient to undermine confidence in the outcome." United States v. Thompson, 27 F.3d 671, 675 (D.C. Cir. 1994). A defendant therefore bears a heavy burden if he is to prevail in an argument alleging prejudice.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700; see also Hill, 474 U.S. at 60. Thus, this Court need not address both parts of the Strickland standard if defendant fails to make a sufficient showing on either one. Strickland, 466 U.S. at 697.

The standard for ineffective assistance of appellate counsel is the same as the standard for trial counsel set forth in Strickland, 466 U.S. at 687. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (the proper standard for assessing a claim of ineffectiveness of appellate counsel is set forth in Strickland); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (same), cert. denied, 534 U.S. 830 (2001); Mayo v. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994) (the Strickland test is also used for claims of ineffective assistance of appellate counsel); United States v. Agramonte, 366 F. Supp. 2d 83, 86 (D.D.C. 2005) (analysis for determining whether appellate counsel provided ineffective assistance of counsel same as for trial counsel), aff'd., 304 Fed. Appx. 877 (D.C. Cir. 2008).

Therefore, a defendant alleging ineffective assistance of appellate counsel must show that: (1) it was objectively unreasonable for appellate counsel to fail to raise a particular issue on appeal or (if applicable) fail to find any arguable issues to appeal and to file a brief raising them; and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful. Smith, 528 U.S. at 285; Cargle, 317 F.3d at 1202; Bell, 236 F.3d at 164.

Appellate counsel is not required to raise all non-frivolous arguments on appeal if she determines, using her professional judgment, not to do so. Jones v. Barnes, 463 U.S. 745, 751 (1983); United States v. Reid, 1996 WL 397484, *1 (D.C. Cir. 1996). As the Jones Court pointed out, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible or at most on a few key issues." Jones v. Barnes, 463 U.S. at 51.

Indeed, appellate counsel "need not (and should not) raise every non-frivolous claim" on appeal, and may instead select among those claims "in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288. "This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986), quoting Jones v. Barnes, 463 U.S. at 751-52; Sellan v. Kuhlman, 261 F.3d 303, 317 (2nd Cir. 2001); see also Bell v. Jarvis, 236 F.3d at 164 ("reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal") (internal quotation marks omitted). A defendant may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that

were clearly and significantly weaker." United States v. Fox, 1996 WL 359574, *2 (4th Cir. 1996); Mayo, 13 F.3d at 533; Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir.) ("Generally, only when ignored [appellate] issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (internal citation omitted); United States v. Guarterman, 228 Fed. Appx. 417, 427 (5th Cir. 2007) (same); Robbins v. Mitchell, 47 Fed. Appx. 380, 385 (6th Cir. 2002) (same). Even if a defendant succeeds in showing that his appellate counsel was objectively unreasonable, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. at 285.

B.   ANALYSIS

   1.   **DEFENDANT CANNOT ESTABLISH THAT EITHER HIS TRIAL COUNSEL OR HIS APPELLATE COUNSEL PERFORMED DEFICIENTLY**

Defendant claims that the government's alleged display of the charges underlying defendant's arrest warrant require a new trial. The record, even as amended, does not support defendant's claim.

Defendant's claims rest on the assertion that the prosecution allegedly displayed to the jury, using the ELMO device,[2] the "REMARKS" section of the "Report of Drug Property Collected, Purchased or Seized," commonly referred to as a "DEA-7."

---

[2]   ELMO is a brand name for a document camera. ELMOs and document cameras are used to enhance presentations and provide more visualization than a regular overhead projector. Unlike a traditional overhead projector that displays only transparent objects, the ELMO is used to display paper documents and other solid, non-transparent objects.

The "DEA-7" to which defendant refers, is a one-page form that was part of Government's Trial Exhibit 2A[3] for identification, appended to the government's initial Opposition as "Exhibit A." Here, the REMARKS section provided:

> On August 10th 2006, members of the Metropolitan Police Department arrested the above named Defendant for HOMICIDE (Arrest Warrant #2006CRW001978). The listed Defendant was also found to "PDID [sic] CRACK COCAINE While ARMED[.]" The listed item was recovered as evidence in reference to the above listed arrest and was recovered by Officer James Boteler of NSID for processing. A portion of white rock was field tested yielding a positive color reaction for cocaine base.

See DEA-7. As to the actual documents comprising the exhibit, defendant stipulated that Government's Trial Exhibit 2A:

> is a laboratory analysis report dated November 2, 2006 and signed by Ms. Lanette M. Allison, a forensic chemist with the Drug Enforcement Administration Mid-Atlantic Laboratory. Government Exhibit 2(a) accurately reflects the results of the chemical analysis conducted on Government Exhibit 2.

See 1/23/07 Tr. 238-239; see also Government Trial Exhibit 6, appended to the government's initial Opposition as "Exhibit B."

Defendant alleges that a display of the DEA-7's REMARKS section occurred during the afternoon session of January 23, 2007, during the government's direct examination of Metropolitan Police Department Detective Anthony Washington.

---

[3] The document itself is marked as "2A," and the Circuit also refers to the exhibit as "2A." However, the trial transcript refers to the document as "2(a)." We preserve the distinction when referencing the document herein. Government Exhibit 2A originally consisted of three pages: (1) the DEA Laboratory Report; (2) photographs of the analyzed drugs; and (3) the "DEA-7." See United States v. Jones, 567 F.3d 712, 718 (D.C. Cir. 2009).

In particular, defendant alleges that the display occurred after Government Exhibits 2 and 2(a) had been admitted in evidence, see 1/23/07 Tr. 239-240,[4] and during the following exchange:

> MR. WALUTES: If I could first go into the area of crack cocaine and how it is used and smokability. I wonder if you might explain what [it] looks like on an [] analyst's report as just cocaine base – if I could hand you, if I could hand you what had been admitted into evidence as both Government Exhibit 2 and 2(a), which are the drugs and the DEA-7 –
>
> Your Honor, may I approach the witness?
>
> THE COURT: Yes.
>
> MR. WALUTES: Detective Washington, if I could draw your attention first to the DEA-7. I wonder if you might explain to us what a DEA-7 is?
>
> THE COURT: Do you want them to look at this?
>
> MR. WALUTES: Thank you, Your Honor.
>
> Do you see on your monitor, Detective Washington, the front page of the DEA-**7**?

---

[4] In clarifying the contents of the exhibits to be admitted, the Court inquired of counsel:

> THE COURT: So we are talking about 2(a) which is the laboratory report and the photographs and we are talking about 2(b) which is a CV or resume of Ms. Allison, is that correct?
>
> MR. BARNETT: That is correct.
>
> THE COURT: I take it they are still being admitted without objection?
>
> MR. MOORE: That is correct, Your Honor.

See 1/23/07 Tr. 240.

THE COURT: What exhibit is it?

MR. WALUTES: Government Exhibit 2(a), Your Honor.

THE COURT: All right.

MR. WALUTES: Do you see that, Detective Washington?

WITNESS: Yes, I do. This is the certified report of controlled substance analysis. This page here is the report that the chemist prepares and filled out during the course of her analysis on laboratory number KY-634.

MR. WALUTES: Is that unique number assigned to this case?

WITNESS: Yes, it is.

MR. WALUTES: Could you draw the connection between Government Exhibit 2(a) and the heat-seal and the DEA-7 report which is now Government Exhibit 2(a) and is on the monitor for the jury to see hopefully?

WITNESS: Yes. If I may go from the beginning.

MR. WALUTES: Please.

WITNESS: Whenever an officer comes into contact with any suspected narcotics, first it's going to be field-tested to determine what it is for the appropriate charge. In this case here it field-tested positive for cocaine.

Once the substance was field-tested, the substance was transported back to the officer's unit where it was processed into evidence. What I mean by processing into evidence, the officer prepared the DEA-7. A DEA-7 is a form –

MR. MOORE: Your Honor, could we approach?

10

| | |
|---|---|
| THE COURT: | Yes. |

(Bench conference on the record.)

| | |
|---|---|
| MR. MOORE: | Your Honor, he had the wrong slide on there.[5] |
| THE COURT: | (Perusing.) One thing you need to do is make sure that none of "also on the guns" and stuff that you don't have on the front, that any of the paperwork and stuff whether it is with the exhibits or otherwise – |
| MR. BARNETT: | He used the report itself and not this. |
| MR. MOORE: | That's what I thought he was using. |
| MR. BARNETT: | He didn't use the "7." He just used this. It has no reference to that. |
| THE COURT: | Okay. And you just need to redact it anyway. Just redact it. But I think it's hard to read which is why I think he was starting to give the explanation either that or just put it through a black pen. |

(End of bench conference on the record.)

| | |
|---|---|
| THE CLERK: | Should we have this on the screen? |
| THE COURT: | What we have on the screen is a laboratory report itself. |
| MR. MOORE: | I believe the juror may be signaling it is not. |
| THE COURT: | You can show that page that's been admitted. |
| MR. WALUTES: | Thank you. |

---

[5] The gist of defendant's amended claim is that the transcriber initially erred by typing "side" rather than "slide" at 1/23/07 Tr, 388, line 24. See Amended Memo at 1-2, see also Exhibit C to Amended Memo. However, as will be discussed below, even assuming that there is a meaningful distinction between "side" and "slide," this supposed distinction does not alter the government's analysis which relies on the entire context as set forth in the transcript of the proceedings.

11

<u>See</u> 1/23/07 Tr. 387-89.  As is clear from the Court's admonition, after allegedly being alerted to the presentation of the "wrong slide," the REMARKS section was not displayed for it does not use the phrase "also on the guns."  In other words, had the REMARKS section of the DEA-7 actually been displayed, the Court's reference would have been to some of the words contained therein – like "HOMICIDE," "NSID," or "field tested" – and not to "also on the guns."

And most conclusively, the Courtroom Deputy Clerk of the Court confirmed that Government Exhibit 2A was a single page:

> THE COURT: The first thing we should talk about is the 609.  But while I'm thinking of it, there are two exhibits that we need to redact and I want to make sure that you do it at some point.  One is the property records so just make sure at some point you actually redact it.
> 
> MR. BARNETT: I think we have redacted it.
> 
> MR. MOORE: I think Mr. Barnett, I believe he gave them to Ms. Patterson to redact them.
> 
> THE COURT: If you have that's fine.  Just make sure.  Before it goes, we'll have you take a look at it again.
> 
> The only other one is 2 doesn't have a cover sheet.  It's just the lab report.  So the one that evidently indicated the arrest warrant charge, it doesn't seem to be part of the evidence, is that accurate?
> 
> MR. MOORE: I didn't think it was and I'm sorry that I cut him off so quickly because Mr. Jones noticed it and I didn't think that that was part of the exhibit which was why I was jumping up so quickly.
> 
> MR. WALUTES: It's all three I believe, Your Honor, but at least the picture.

| | |
|---|---|
| THE COURT: | You don't have any here.  You may have it there. |
| MR. WALUTES: | I don't really care about the third page so much, Your Honor.  The second page as to the pictures of the drugs - |
| THE COURT: | I'm sorry.  The pictures are there.  The lab with the purity.  He was looking at what I thought was a front page to the DEA-7, which had the charge for the arrest warrant.  Is that part of the exhibit or not? |
| MR. WALUTES: | I think Mr. Barnett and I have spoken.  We are of one mind.  We don't need the third page, no. |
| THE COURT: | Can we just look and see, whether it is a two-page exhibit or three page, Mrs. Patterson? |
| THE CLERK: | Which one, Your Honor? |
| THE COURT: | It is I believe 2.  I'm sorry.  It is 2(a).  Is it a one-page lab report and the photos or is it something more? |
| THE CLERK: | The lab report? |
| THE COURT: | One page.  The lab report is just one page, is that correct? |
| THE CLERK: | Yes. |
| THE COURT: | Okay.  We don't need to worry about that going back. |

See 1/23/07 Tr. 426-27,. Further, the Court instructed the jury, inter alia, that:

> During your deliberations, you may consider only the evidence properly admitted in this case. The evidence in this case was the sworn testimony of the witnesses, the exhibits which were admitted into evidence and the facts stipulated to by the parties.

13

(1/24/07 Tr. 492).[6] The jury is presumed to have followed the Court's instructions. United States v. Olano, 507 U.S. 725 (1993). Thus, the record conclusively establishes that the "DEA-7," which contained a reference to the homicide warrant in the "REMARKS" section, was not included among the pages comprising Government Exhibit 2A, was not admitted as an exhibit, did not go back to the jury for deliberations, and was expressly excluded from the jury's consideration. Therefore, defendant has not established that either his trial counsel or his appellate counsel performed deficiently in this regard.

Accordingly, for the reasons set forth herein, and for the reasons previously set forth in its Opposition to Defendant's Pro Se Motion to Vacate, Set Aside, or Correct the Sentence, pursuant to 28 U.S.C. § 2255 (Docket No. 75), filed on December 17, 2010, the government submits that the record establishes that no improper display of the DEA-7 occurred during the trial.

### 2. DEFENDANT HAS NOT ESTABLISHED THAT HE WAS PREJUDICED BY ANY ACTUAL OR PERCEIVED ACT OR OMISSION

Assuming, arguendo, that an improper display to the jury of the REMARKS section of the DEA-7 had occurred, defendant has not, and can not, establish that, but for his trial counsel's allegedly deficient performance regarding the DEA-7, there is a reasonable probability that the result of the proceeding would have been different, or that there is a reasonable probability that, but for his appellate counsel's alleged failure to raise the DEA-7 issue, he would have prevailed on his appeal.

---

[6] The Court also instructed the jury that "Mr. Jones' prior conviction is only to be considered for the purposes of deciding element number 3 as to this offense [knowing possession of a firearm and ammunition after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year] and for no other reason." See 1/24/07 Tr. 506.

First, defendant asserted on direct appeal "that he is entitled to a new trial because the government disclosed to the jury that he was arrested for murder." See Jones, 567 F.3d at 717. Because the instant claims were fully addressed by the Circuit and decided adversely to him, and because defendant has not alleged, much less demonstrated, any changes in the law since his appeal, these claims are insufficient grounds to vacate his conviction and sentence.

Specifically, the Circuit reasoned:

> Although the prosecutor used Exhibit 2A when questioning an expert witness and repeatedly described it as "the DEA–7," it is clear from the transcript that he used the term as shorthand to refer to the entire three-page document and only displayed the first page. *See, e.g.,* Trial Tr. 387 (Jan. 23, 2007) ("Do you see on your monitor . . . the *front* page of the DEA–7?") (emphasis added). This is also clear from the testimony of the witness, who described what he was seeing on the screen as a "certified report of controlled substance analysis," which was the laboratory report included as the first page of Exhibit 2A. *Id*. at 388. There is no evidence that the last page of the exhibit — the DEA–7 itself — was ever displayed to the jurors.
>
> Jones' attorney did interrupt the testimony regarding Exhibit 2A and stated that the prosecutor "ha[d] the wrong side on there." *Id*. (emphasis added). The most natural reading of the attorney's comment is that the back side of the first page of Exhibit 2A — the laboratory report analyzing the drugs—was on the screen. Had the DEA–7 itself been displayed, the attorney would have stated that the wrong page was on the monitor. Indeed, the government clarified during a bench conference that the prosecutor "didn't use the '7' " when questioning the witness. *Id*. at 389. At the end of the conference, the court confirmed that "[w]hat we have on the screen is a laboratory report itself"— which, again, was the first page of Exhibit 2A. *Id.* And after the prosecution rested, the court stated there was no "need to worry about [Exhibit 2A] going back" with the jury because the DEA–7 indicating the arrest warrant charge was not "part of the evidence." *Id*. at 426–27.

Jones, 567 F.3d at 718. Thus, the Circuit has ruled on this issue and the "mere lack of success on that appeal does not pave the way for collateral attack," Garris, 794 F.2d at 726-27, because "[a]ny

other rule would frustrate policies of strongly favoring conservation of judicial resources and finality of judicial decisions.'" See Greene, 834 F.2d at 1070.[7]

Further, as set forth above, the Court instructed the jury that "[d]uring your deliberations, you may consider only the evidence properly admitted in this case," see 1/24/07 Tr. 492, and that "[t]he evidence in this case was the sworn testimony of the witnesses, the exhibits which were admitted into evidence and the facts stipulated to by the parties," id., and because the jury is presumed to have followed the Court's instructions, see Olano, 507 U.S. at 740-41; see also Strickland, 466 U.S. at 694 (in assessing prejudice for purposes of ineffective-assistance claim, "a court should presume . . . that the judge or jury acted according to law."), defendant can not establish that even if the DEA-7 had been displayed to the jury that there is a reasonable probability that he would have been acquitted absent his trial counsel's allegedly deficient performance, or that the outcome of his appeal would have been affected in his favor absent his appellate counsel's allegedly deficient performance. Therefore, defendant has not met his burden of establishing ineffective assistance of counsel.

---

[7] Defendant's assertion of a transcription error – the use of "side" rather than "slide" – does not alter the Circuit's reasoning on this point, because, most significantly, "after the prosecution rested, the court stated there was no 'need to worry about [Exhibit 2A] going back' with the jury because the DEA–7 indicating the arrest warrant charge was not 'part of the evidence.'" See Jones, 567 F.3d at 26–27.

**C.     THERE IS NO NEED FOR A HEARING**

The Court need not hold a hearing in this matter because the records of the case conclusively show that defendant is not entitled to relief because the DEA-7 was not presented to the jury as evidence, and defendant therefore has not established ineffective assistance of either trial counsel or appellate counsel.  See 28 U.S.C. § 2255 (b) (no hearing is necessary if the motion, files and records of the case conclusively show that the defendant is not entitled to relief).  Accordingly, defendant's motion should be denied without a hearing.

**CONCLUSION**

For the reasons stated herein, and in the government's previous filing, Defendant's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 should be summarily denied.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Division


_____/S/_____
T. ANTHONY QUINN
D.C. Bar No. 415-213
Assistant United States Attorney
555 Fourth Street, NW
Special Proceedings Division, Room 10-909
Washington, D.C.  20530
(202) 252-7558

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that I caused a copy of the foregoing to be served by electronic transmission on counsel for defendant, GREGORY W. GARDNER, ESQUIRE, on this 9th day of November, 2012.

              _____/S/_____
              T. ANTHONY QUINN
              Assistant United States Attorney