# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DUANE PHILLIP JONES,

    Defendant.

**Criminal No. 06-273 (CKK)**
**(Civil Action No. 10-1677)**

## MEMORANDUM OPINION
(October 30, 2014)

In January 2007, Duane Phillip Jones ("Jones") was convicted by a jury in this Court of: one count of unlawful possession with intent to distribute cocaine base known as crack cocaine (Count I); one count of possession a firearm in furtherance of a drug trafficking offense (Count II); and one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year (Count III). Presently before the Court is Jones' [64] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and [93] Amended Motion to Vacate or Set Aside Pursuant to 28 U.S.C. § 2255.[1] Upon a searching review of the parties' submissions,[2] the relevant authorities, and the record as a whole, the Court finds no grounds for setting aside Jones' conviction and sentence. Accordingly,

---

[1] Jones filed his first motion *pro se* and his amended motion with the assistance of counsel. Jones' Amended Motion does not include all of the claims initially raised in Jones' original Motion or address whether Jones no longer wants to proceed on those claims. Accordingly, the Court has addressed all claims raised in both Jones' original Motion and his Amended Motion.

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [64]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n to Def.'s Mot."), ECF No. [75]; Def.'s Amend. Mot. to Vacate Sentence ("Def.'s Amend. Mot."), ECF No. [93]; Govt.'s Opp'n to Amended Mot. to Vacate Sentence ("Govt.'s Opp'n to Amend. Mot."), ECF No. [94].

the Court shall DENY Jones' [64] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and [93] Amended Motion to Vacate or Set Aside Pursuant to 28 U.S.C. § 2255.

## I. BACKGROUND

On August 10, 2006, United States Deputy Marshals were dispatched to locate and arrest Jones for an outstanding warrant for first-degree murder issued by the Superior Court of the District of Columbia. The Marshals arrived at Clay Terrace in northeast Washington, D.C. While exiting his vehicle, Deputy U.S. Marshal James Cyphers ("Cyphers") made eye contact with Jones who took off running. Cyphers chased Jones for approximately 100 yards, during which time Cyphers heard a gunshot fired to his left. Cyphers pursued Jones into a stairwell and stopped him by grabbing him around the waist and pulling him down. Cyphers asked Jones whether he had "anything on" him. Jones indicated, "I have a burner in my waistband." Cyphers understood this statement to mean that Jones had a gun and another deputy marshal removed a loaded firearm from Jones' waistband. Jones then was placed in handcuffs and brought to a police car where he was patted down by third deputy marshal. During the pat-down search, a bag containing crack cocaine was located in Jones' back pocket.[3]

On September 15, 2006, a grand jury indicted Jones in connection with Jones' possession of the firearm and crack cocaine. Indictment, ECF No. [1]. The matter proceeded to trial in this Court, and on January 24, 2007, a jury convicted Jones on all three counts of the indictment: Possession with Intent to Distribute 5 Grams or More of Crack Cocaine, in violation of 21 U.S.C.

_____

[3] This undisputed account of the incidents surrounding the charges in the instant matter have been summarized from the United States Court of Appeals for the District of Columbia Circuit's opinion. *See United States v. Jones*, 567 F.3d 712, 713-14 (D.C. Cir. 2009).

2

§§ 841(a)(1) and (b)(1)(B)(iii); Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). Verdict Form, ECF No. [30].

On June 11, 2007, this Court sentenced Jones to 135 months of imprisonment on Count I and 120 months of imprisonment on Count III to run concurrently. The Court also sentenced Jones to 60 months of imprisonment on Count II to run consecutively to Counts I and III. Judgment at 3 (Jun. 21, 2007), ECF No. [44]. The Court subsequently granted Jones' Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense and on January 5, 2011, resentenced Jones to a term of 120 months of imprisonment on Count I due to a retroactive amendment to the sentencing guidelines; the sentences for Counts II and III were unaffected. Order (Sept. 27, 2010), ECF No. [63]; Order (Jan. 5, 2011), ECF No. [79]. Jones filed a timely appeal and on June 9, 2009, his conviction was upheld by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in a published opinion. *See generally United States v. Jones*, 567 F.3d 712 (D.C. Cir. 2009). Jones currently is serving his sentence.

Pending before the Court are Jones' original Motion and Amended Motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. *See generally* Def.'s Mot.; Def.'s Amend. Mot. Jones argues that his sentence should be set aside because both his trial and appellate counsel provided him with ineffective assistance of counsel. These claims are premised on Jones' argument that his trial and appellate counsel failed to adequately represent him after government counsel at trial allegedly published to the jury a piece of evidence previously deemed inadmissible. Jones also argues that his appellate counsel failed to raise on appeal a

3

Sixth Amendment argument related to his right to cross-examine the analyst who prepared a laboratory report.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these

4

claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, -- U.S. --, --, 131 S. Ct. 770, 787 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Strickland*, 466 U.S. at 691. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*.

## III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "'The decision whether to hold a hearing is committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced.'" *United States v. Orleans-Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*, No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted)); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008). "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion." *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 560 U.S. 915 (1992)). To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings, the exhibits attached thereto, and the entire record in the criminal proceeding as well as based on its own recollection, the Court finds that there is no need for an evidentiary hearing on the instant motion. As explained below, Jones has not proffered detailed and factual allegations outside of the record or the Court's personal knowledge or recollection such that a hearing is required. Accordingly, the Court shall

6

render its findings based on the parties' pleadings, the record, and its own recollection of the events at issue.

Jones' claims for ineffective assistance of counsel center around two events. First, Jones alleges that an unredacted version of a report including information previously deemed inadmissible as more prejudicial than probative was displayed to the jury during trial. Second, Jones alleges that he was denied his Sixth Amendment right to cross-examine the analyst who signed the laboratory report indicating that the substance seized from him was crack cocaine. The Court shall address the merits of each of Jones' specific allegations in turn.

A. *Alleged Display of the DEA-7 to the Jury*

Jones raises six claims of ineffective assistance of counsel stemming from the alleged display of one page of evidence, titled the "Report of Drug Property Collected, Purchased or Seized," commonly known as the "DEA-7," in its unredacted form during trial. Prior to trial, the Government indicated it would not disclose to the jury that the arrest warrant that the Marshals were executing when the firearm and crack cocaine were recovered was issued for the charge of first-degree murder. Tr. 7:15–8:2 (Jan. 11, 2007); Tr. 2:13-23 (Jan. 16, 2007). The Court specifically noted that the introduction of the nature of the charge in front of the jury would be more prejudicial than probative. Tr. 2:22-23 (Jan. 16, 2007). Jones alleges that at trial, the government displayed to the jury an unredacted version of the DEA-7, indicating in the "REMARKS" section: "On August 10th 2006, members of the Metropolitan Police Department arrested the above named Defendant for HOMICIDE (Arrest Warrant #2006CRW001978 . . . ." Def.'s Ex. A (DEA-7).

As the Court will explain further below, the term "DEA-7" as used during this trial was

shorthand for evidence consisting of three pages of which only the third page contained the pending charge. The front page of the evidence was the DEA laboratory analysis, and the second page contained photos of the recovered drugs. However, as the record reflects, the actual exhibit admitted into evidence at trial and (albeit confusingly) referred to by the prosecutor as the DEA-7 only consisted of the first two pages and not the last page (the actual DEA-7) that listed the pending homicide charge. The record further demonstrates that the actual DEA-7 was never admitted into evidence and also was never displayed to the jury.

Jones contends that the alleged display of the DEA-7 including the charge information took place via a document camera, more commonly known as an "ELMO," that projected the image of the paper document onto a screen during testimony. Govt.'s Opp'n to Def.'s Amend. Mot. at 7 & 7 n.2. As a result of this alleged display, Jones argues that his trial counsel provided ineffective assistance of counsel by: (1) failing to object when the Government displayed the evidence; (2) failing to make a clear record after the Government displayed the evidence; (3) failing to request a mistrial after the Government displayed the evidence; and (4) failing to request a curative instruction after the Government displayed the evidence. Jones further argues that his appellate counsel provided ineffective assistance of counsel by: (1) failing to correct the transcript record prior to the appeal; and (2) failing to establish that the jury did in fact see the unredacted DEA-7. The Government contends that the record establishes that there was no improper display of an unredacted version of the DEA-7. Govt.'s Opp'n to Def.'s Amend. Mot. at 14. Further, the Government argues that even if an unredacted version of the DEA-7 was displayed to the jury, Jones has not established that he was prejudiced by the display. *Id.* at 14-16. The Court finds that Jones has not established that the third page of the evidence described

as the DEA-7 was displayed to the jury based on a plain reading of the corrected transcript as well as the Court's own recollection of the events at issue. Accordingly, the Court finds that Jones' ineffective assistance of counsel claims related to this issue fail because each claim relies on the veracity of Jones' assertion that the third page with the pending homicide charge was in fact displayed to the jury.

As already noted, the DEA-7 was originally part of Government's Exhibit 2(a) that consisted of three pages: the DEA Laboratory Report, photographs of the analyzed drugs, and the DEA-7 that contained the pending charge. Govt.'s Ex. A (Laboratory Report; Photographs; DEA-7); Govt.'s Opp'n to Def.'s Amend. Mot. at 8 n.3; *see also United States v. Jones*, 567 F.3d 712, 717 (D.C. Cir. 2009). However, when seeking to admit Exhibit 2(a) at trial, the prosecutor explained: "Government 2(a) is a laboratory analysis report dated November 2, 2006 and signed by Ms. Lanette M. Allison, L-a-n-e-t-t-e M. A-l-l-i-s-o-n, a forensic chemist with the Drug Enforcement Administration Mid-Atlantic Laboratory. Government Exhibit 2(a) accurately reflects the results of the chemical analysis conducted on Government Exhibit 2." Tr. 239:6-12 (Jan. 23, 2007). The Court further explained: "So we are talking about 2(a) which is the laboratory report and the photographs  . . . ." [4] *Id.* at 240:12-13. Accordingly, as described, Exhibit 2(a) consisted of two pages that were admitted into evidence without objection and did not include the actual DEA-7 form at all.[5] *Id.* at 240:15-19.

---

[4] Later on in the proceedings, the Court again clarified that admitted Exhibit 2(a) "was the lab report, and the photos which we're looking at . . . ." Tr. at 327:7-9 (Jan. 23, 2007).

[5] As the Government notes in its oppositions, the exhibit was marked 2A, however the trial transcript refers to the exhibit as 2(a). Govt.'s Opp'n to Def.'s Mot. at 11 n.3; Govt.'s Opp'n to Def.'s Amend. Mot. at 8 n.3. The Court shall refer to the exhibit in question as 2(a) in order to maintain consistency with the trial transcript upon which it relies.

Jones alleges that the display of the DEA-7 with the charge information came during the testimony of Detective Anthony Williams, who testified as an expert on the drug trade in the District of Columbia. *Id.* at 386:19–387:3. The relevant portion of the transcript follows:

> RONALD WALUTES [Government counsel]: If I could first go into the area of crack cocaine and how it is used and smokability. I wonder if you might explain what looks on an a [sic] analyst's report as just cocaine base – if I could hand you, if I could hand you what has been admitted into evidence both Government Exhibit 2 and 2(a,) which are the drugs and the DEA-7 –
> Your Honor, may I approach the witness?
>
> THE COURT: Yes.
>
> MR. WALUTES: Detective Washington, if I could draw your attention first to the DEA-7. I wonder if you might explain to us what a DEA-7 is?
>
> THE COURT: Do you want them to look at this?
>
> MR. WALUTES: Thank you, Your Honor.
> Do you see on your monitor, Detective Washington, the front page of the DEA-7?
>
> THE COURT: What exhibit is it?
>
> MR. WALUTES: Government Exhibit 2(a), Your Honor.
>
> THE COURT: All right.
>
> MR. WALUTES: Do you see that, Detective Washington?
>
> DET. WASHINGTON: Yes, I do. This is the certified report of controlled substance analysis. This page here is the report that the chemist prepares and filled out during the course of her analysis on laboratory number KY-634.
>
> MR. WALUTES: Is that unique number assigned to this case?
>
> DET. WASHINGTON: Yes, it is.
>
> MR. WALUTES: Could you draw the connection between Government Exhibit 2(a) and the heat-seal and the DEA-7 report which is now Government Exhibit 2(a) and is on the monitor for the jury to see hopefully?

DET. WASHINGTON: Yes. If I may go from the beginning.

MR. WALUTES: Please.

DET. WASHINGTON: Whenever an officer comes into contact with any suspected narcotics, first it's going to be field-tested to determine what it is for the appropriate charge. In this case here it field-tested positive for cocaine.
Once the substance was field-tested, the substance was transported back to the officer's unit where it was processed into evidence. What I mean by processing into evidence, the officer prepared the DEA-7. A DEA-7 is a form --

SHAWN MOORE [Defense Counsel]: Your Honor, could be approach?

THE COURT: Yes.

(Bench conference on the record.)

MR. MOORE: Your Honor, he has the **wrong slide** on there.[6]

THE COURT: (Perusing.) One thing you need to do is make sure that none of "also on the guns" and stuff that you don't have on the front, that on any of the paperwork and stuff whether it is with the exhibits or otherwise –

MR. WALUTES: --

ERIK BARNETT [Government Counsel]: He used to report itself and not this.

MR. MOORE: That's what I thought he was using.

MR. BARNETT: **He didn't use the "7." He just used this. It has no reference to that.**

THE COURT: Okay. And you just need to redact it anyway. Just redact it. But I think it's hard to read which is why I think he was starting to give the explanation either that or just put it through a black pen.

(End of bench conference on the record.)

THE CLERK: Should we have this on the screen?

_____

[6] The correction of "wrong side" to "wrong slide" was made pursuant to a letter from the court reporter of record who prepared the transcript that was filed as an exhibit to Jones' Amended Motion. *See* Def.'s Ex. C.

THE COURT: **What we have on the screen is a laboratory report itself.**

MR. MOORE: I believe the juror may be signaling it is not.[7]

THE COURT: You can show the page that's been admitted.

MR. WALUTES: Thank you.
If I might start over, Detective Washington. Could you explain the connection and the unique number you that you started to explain between the heat-seal which is Government Exhibit 2 and the DEA-7 which is Government Exhibit 2(a)?

*Id.* at 387:4–390:2 (emphasis added).

Jones contends that prior to the bench conference, an unredacted version of the DEA-7 indicating that an arrest warrant was issued for Jones for the charge of homicide, was displayed to the jury. Def.'s Amend. Mot. at 1-2. Neither party contends that the DEA-7 was provided to the jury as part of the exhibits and, accordingly, the only issues are whether page three of the evidence, the unredacted DEA-7, was displayed to the jury during trial and, if so, whether Jones was provided with ineffective assistance of counsel related to this display during trial and the subsequent appeal.

Several facts support the finding that the DEA-7 listing Jones' charge information was not displayed to the jury. First, it is clear from the record that when the Court admitted Exhibit 2(a), it was admitted as just two pages, consisting of the laboratory report and the photographs of the drugs. *Id.* at 239:6-12 (prosecutor's description of Exhibit 2(a)); *id.* at 240:12-13 (Court's description of Exhibit 2(a)); *Id.* at 240:15-19 (receiving Exhibit 2(a) into evidence without objection); *Id.* at 327:7-9 (Court's further description of Exhibit 2(a)). Second, it is clear from the record that the prosecutor colloquially referred to Exhibit 2(a) in its entirety as the "DEA-7,"

---

[7] The juror signaled that the jury monitoring screen was not operational.

even though that was not the actual document he was referencing. *See id.* at 387:19-20 (referring to the "front page" of the "DEA-7" when the actual DEA-7 is only a one page document). Third, after Detective Washington indicates that he sees the "front page of the DEA-7," i.e. Exhibit 2(a), on the screen, he explains, "This page here is the report that the chemist prepares and filled out during the course of her analysis . . . ." *Id.* at 388:2-4. This statement clarifies that Detective Washington is looking at the laboratory report and not the DEA-7. Fourth, at the bench conference, the prosecutor clarifies that he did not show the "7," referring to the DEA-7 that included the pending homicide charge, and instead used the "report," meaning the laboratory report that did not include the charge information. *Id.* at 389:6-9. Finally, after the bench conference, the Deputy Courtroom Clerk asks the Court if the document should be displayed on the screen and the Court confirms, "What we have on the screen is a laboratory report itself." *Id.* at 389:15-17. Accordingly, it is clear from the record that while Detective Washington begins to testify about the process for creating the DEA-7 prior to defense counsel's request to approach the bench, the record demonstrates that the actual document on display was the laboratory report which makes no mention of the arrest warrant or the nature of the charge for which the warrant was issued. *See* Govt.'s Ex. A at 1 (Laboratory Report).

Jones argues that defense counsel's request to approach and discussion after the close of evidence demonstrates that the DEA-7 was displayed to the jury. Specifically, Jones argues "[t]he only rational explanation for trial counsel's immediate interjection is that the Government showed the unredacted DEA-7 to the jury." Def.'s Amend. Mot. at 2. Jones also contends that his counsel later clarifies that the unredacted DEA-7 had been shown to the jury. *See id.* At the close of evidence, the Court reviewed the exhibit and noted, "It's just the lab report. So the one

that evidently indicated the arrest warrant charge, it doesn't seem to be part of the evidence, is that accurate?" Tr. 426:19-21 (Jan. 23, 2007). Defense counsel responded, "I didn't think it was and I'm sorry that I cut him off so quickly because Mr. Jones noticed it and I didn't think that was part of the exhibit which was why I was jumping up so quickly." *Id.* at 426:22-25. While the Court does not dispute Mr. Jones' claim that he informed his counsel about the DEA-7, this exchange does not indicate that the DEA-7 actually was displayed on the screen but rather that it was in the exhibits provided to defense counsel and Jones. The inclusion of the DEA-7 as part of the exhibit prior to being provided to the jury is further discussed between the Court and counsel at the close of evidence, and the Government indicates that the DEA-7 does not need to be included in the exhibit at all.[8] *Id.* at 427:8-13. The Court is not persuaded that either Jones' counsel's request to approach the bench during Detective Washington's testimony or the discussion at the close of evidence clarifying that the DEA-7 was not part of Exhibit 2(a) demonstrates that the DEA-7 was displayed to the jury. Indeed, Jones' counsel's request to approach the bench only demonstrates that Jones informed him that the DEA-7 was in the packet of evidence provided to him, but not in the admitted exhibits provided to the jury. Moreover, nowhere in the record does either Jones' counsel or the Court indicate that they actually saw the DEA-7 displayed as Jones contends.

Further, the Court notes that this issue was raised on appeal and the D.C. Circuit also held that Jones failed to establish that the jury ever saw the DEA-7. *United States v. Jones*, 567 F.3d 712, 717 (D.C. Cir. 2009). After reviewing the transcript, the D.C. Circuit noted that "[a]lthough

---

[8] While Jones does not assert that DEA-7 was sent back with the jury as an exhibit, the Court did direct that the DEA-7 be redacted in compliance with its earlier ruling. Tr. 389:10-13, 426:9-11 (Jan. 23, 2007).

the prosecutor used Exhibit 2A when questioning an expert witness and repeatedly described it as 'the DEA-7,' it is clear from the transcript that he used the term as shorthand to refer to the entire three-page document and only displayed the first page." *Id.* at 718.

Jones filed a letter with the instant motion from the court reporter correcting the version of the transcript that was relied on by the D.C. Circuit. The letter indicates that the transcript should be corrected to reflect that during the bench conference, Mr. Moore, Jones' trial counsel, indicated that the Government had placed the wrong "slide" on the projector, rather than the wrong "side" as the earlier version of the transcript indicated. Def.'s Ex. C (Letter from William D. McAllister). Jones argues that the difference between the word "side" and "slide" is noteworthy because "side" implies that the jury saw the blank back side of the exhibit whereas "slide" indicates that the jury was shown the wrong exhibit altogether. Def.'s Amend. Mot. at 1-2. The Court does not accept this reading of the transcript as corrected and, instead, finds that the substitution of the word "side" for "slide" does not alter the plain reading of the transcript, that the government counsel showed the laboratory report.

The D.C. Circuit did note that defense counsel's use of the term "side" in the uncorrected version of the transcript did lend itself to the reading that the unredacted version of the DEA-7 was not shown to the jury. In relation to defense counsel's statement that the wrong side was displayed, the D.C. Circuit noted:

> The most natural reading of the attorney's comment is that the back side of the first page of Exhibit 2A -- the laboratory report analyzing the drugs -- was on the screen. Had the DEA-7 itself been displayed, the attorney would have stated that the wrong *page* was on the monitor.

*Jones*, 567 F.3d at 718. Jones now contends that the corrected record "reflects that trial counsel

15

stated that the Government displayed the wrong 'slide', meaning the wrong exhibit." Def.'s Amend. Mot. at 1-2. The Court disagrees that the distinction between side and slide demonstrates that the DEA-7 was shown to the jury based on it reading of the entire transcript as described above.

Finally, the Court notes that while the transcript itself begs the reading that the DEA-7 was never displayed to the jury, the Court itself has a recollection of the incidents at issue. The Court has a clear recollection that the Government never published to the jury the DEA-7 either in its redacted or unredacted form, but rather that the laboratory report that included no information about Jones' arrest warrant or the charge related to it was displayed.[9] Accordingly, based on the corrected record and the Court's own recollection, the Court finds that the unredacted version of the DEA-7 was not displayed to the jury during trial.

Given that Jones' six ineffective assistance of counsel claims are premised on counsel's failure to properly represent him after this alleged display to the jury, the Court finds these related ineffective assistance of counsel claims also must fail. Jones has not established that his trial counsel committed an error by failing to object, failing to make a clear record, failing to request a mistrial, or failing to request a curative instruction, because the DEA-7 with the pending charge was not shown to the jury. Further, Jones has not established that appellate counsel rendered ineffective assistance of counsel by failing to correct the transcript record prior

---

[9] The Court notes that had the unredacted version of the DEA-7 been displayed to the jury, such a display would have been in direct violation of a Court order, and the Court would have had the opportunity and would have taken measures to correct it. Order at 6 (Jan. 12, 2007), ECF No. [21] ("On direct or cross-examination of a witness, counsel shall not . . . show to the jury a document or anything else that has not yet been received into evidence . . . .").

to the appeal or failing to demonstrate that the DEA-7 was in fact shown to the jury.[10]  While it is

the clear that the D.C. Circuit did discuss defense counsel's use of the word "side" in reaching its

decision, this correction to the transcript does not demonstrate that there is a reasonable

probability that but for appellate counsel's failure to obtain a corrected transcript prior to the

appeal, there would have been a different result on appeal.  *See Strickland*, 466 U.S. at 694.

Indeed, the majority of the language in the transcript relied on by the D.C. Circuit and by this

Court to determine that the DEA-7 was not displayed to the jury is unaffected by the correction

of the word "side" to "slide."  Accordingly, the Court shall deny each of Jones' ineffective

assistance of counsel claims as related to the alleged display of the DEA-7 to the jury because

the Court concludes that the display did not occur based on the corrected record and its own

recollection of the events at trial.

     B.  *Right to Cross-Examine Laboratory Analyst*

     Finally, Jones asserts that appellate counsel was ineffective by failing to raise the issue on

appeal of whether Jones had a Sixth Amendment right to cross-examine the analyst who

completed a laboratory report admitted into evidence.  Def.'s Mot. at 8.  In making this

argument, Jones relies on the Supreme Court of the United States' holding in *Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305 (2009).  On June 25, 2009, the Supreme Court held that affidavits

showing the results of forensic analyses performed on seized substances are testimonial

statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth

_____

[10] Jones in his Amended Motion asserts as a separate ground that his appellate counsel failed to consult him concerning appellate issues and had she consulted him, he would have informed her of the error in the transcript.  Def.'s Amend. Mot. at 11-12.  However, since the Court has concluded that the DEA-7 was never shown to the jury based on the corrected record, the Court finds that Jones does not succeed on this ground.

Amendment. *Id.* at 309-11. The Court found that "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the analysts at trial.'" *Id.* at 311. Jones argues that his appellate counsel erred by failing to argue on appeal that this Court committed an error by allowing the Government to introduce documents at trial signed by an analyst who did not appear at trial. Def.'s Mot. at 8.

In conformance with *Strickland*, Jones must first show "that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted). Appellate counsel cannot be ineffective for failing to raise clearly non-meritorious issues. *C.f. United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) ("[A] lawyer is not 'ineffective' when he fails to file a meritless motion.") (citing *United States v. Wood*, 879 F.2d 927, 933 (D.C. Cir. 1989)). The Court finds that Jones' Sixth Amendment claim is non-meritorious as described herein and, accordingly, Jones has failed to establish that his appellate counsel acted in an objectively unreasonable manner.

The parties entered into a written stipulation, signed by counsel for both parties and Jones himself, regarding the analysis of the seized substance. Govt.'s Ex. B (Parties' Stipulation). Specifically, the parties stipulated that the seized substance was crack cocaine, a Schedule II controlled substance. *Id.* Further, the parties stipulated that: the chain of custody was properly maintained; the laboratory analysis in question accurately reflected the results of the chemical analysis; and that Lanette Allison, the Forensic Chemist who completed the laboratory analysis, was qualified to perform the analysis and make the conclusions as set forth in the report. *Id.* In

addition to providing the written stipulation, the stipulation also was read into the record at trial. Tr. at 238:20–239:16 (Jan. 23, 2007). Given that the report was admitted into evidence pursuant to a stipulation, Jones' Confrontation Clause claim fails. *See United States v. Moore*, 651 F.3d 30, 71 n.13 (D.C. Cir. 2011), *aff'd* -- U.S. --, 133 S. Ct. 714 (2013) (citing *Bullcoming v. New Mexico*, -- U.S. --, --, 131 S. Ct. 2705, 2709 (2011)). The Court further notes that Jones, in a stipulation that he personally signed, not only attested to the accuracy of the analysis, but also stipulated to the fact that the seized substance was in fact crack cocaine, a Schedule II controlled substance.[11] Govt.'s Ex. B (Parties' Stipulation). Accordingly, Jones' claim that he should have been afforded an opportunity to cross-examine Ms. Allison, the Forensic Chemist, is a non-meritorious claim in light of Jones' stipulation. Given that Jones' Confrontation Clause claim is non-meritorious, the Court cannot find that his appellate counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, nor that his appellate counsel committed an error that caused him prejudice. *See United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008).

Further, the Court notes that *Melendez-Diaz* was decided two weeks after the D.C. Circuit affirmed Jones' conviction. *See* 557 U.S. 305 (decided June 25, 2009); *United States v. Jones*, 567 F.3d 712 (D.C. Cir. 2009) (decided June 9, 2009). Accordingly, to the extent that Jones appears to be arguing that his appellate counsel should have raised the issue on his appeal, the Court notes that the Supreme Court's holding in *Melendez-Diaz* was not binding case law at the time of the appeal, nor was it relevant to the facts of this case given the parties' stipulation.

---

[11] As the Supreme Court noted in *Melendez-Diaz*, Jones' stipulation in this case is not uncommon. 557 U.S. at 328 ("Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case.").

Accordingly, the Court finds that Jones has failed to establish that his appellate counsel rendered ineffective assistance of counsel by failing to raise the issue of Sixth Amendment Confrontation Clause claim related to lab report analyzing the seized substance.

### C.  *Certificate of Appealability*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either issue or deny a certificate of appealability.  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing demands that Jones demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court concludes that Jones has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Jones intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside the Defendant's conviction or sentence.  Accordingly, Jones' [64] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED, and [93] Amended Motion to Vacate or Set Aside Pursuant to 28 U.S.C. § 2255 is DENIED.  Furthermore, no Certificate of Appealability shall

issue from this Court.  To the extent Jones intends to file an appeal, he must seek a Certificate of

Appealability from the United States Court of Appeals for the District of Columbia Circuit in

accordance with Federal Rule of Appellate Procedure 22.  An appropriate Order accompanies

this Memorandum Opinion.

**This is a final, appealable order.**


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE